IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RANDY ALEXANDER, and MEMPHIS CENTER FOR INDEPENDENT LIVING ("MCIL"), | §<br>§<br>§<br>§ |
| Plaintiffs, individually and on behalf of all others similarly situated | § Civil Action No.:<br>§<br>§ Complaint – Class Action. |
| v. | §<br>§ |
| FEDERAL EXPRESS CORPORATION; and DOES 1- 25, inclusive, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Randy Alexander (hereinafter "Plaintiff Randy Alexander"), and Plaintiff, Memphis Center for Independent Living (hereinafter "MCIL"), individually and on behalf of all others similarly situated, by their attorneys, assert the following upon information and belief, except for those allegations about Plaintiffs, which are based on their knowledge:

I.

## INTRODUCTION

1. Plaintiff Randy Alexander, who uses a wheelchair due to a mobility related disability, brings this action individually and on behalf of all others similarly situated against FEDERAL EXPRESS CORPORATION and DOES 1-25 asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), and its related regulations.

2. Plaintiff MCIL brings this action in an associational capacity on behalf of beneficiaries who are in wheelchairs and who have been and will continue to be denied the full and equal enjoyment of Defendant's drop boxes. MCIL exists to ensure that governments, businesses, employers and other individuals comply with the laws that protect the rights of people

who in wheelchairs in order that they might participate fully in all aspects of American society. MCIL's beneficiaries in the Memphis and Mid-South area are current and/or potential customers of Defendant and seek access to Defendant's drop boxes that they have been denied with access equal to able bodied individuals.

3. Defendants FEDERAL EXPRESS CORPORATION and DOES 1-25 (collectively, "Defendants") maintain a nationwide system of more than 30,000 unmanned package drop boxes to provide customers the option to drop off packages in office buildings, shopping centers, grocery stores, and corporate and industrial parks.

4. Plaintiffs' claims arise from their personal experience at Defendants' drop boxes, where he experienced accessibility barriers to the use of the drop boxes in the form of excessive reach ranges and excessive force required when attempting to ship packages using the drop boxes.

5. Plaintiffs assert that the excessive reach range and maximum force to open conditions required to operate the drop box doors are due to Defendants' presently insufficient internal repair and maintenance procedures, which are unable to guarantee compliance with the reach range and operable parts requirements of the ADA's implementing regulations on the subject. See 28 C.F.R. §§ 36.101 et seq.

6. The ADA expressly authorizes injunctive relief aimed at modification of existing policies, practices, or procedures that Plaintiffs seek in this action. In the relevant part, the ADA states "Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods." 42. U.S.C. § 12188(a)(2).

7. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiffs seek a permanent injunction requiring that:

- Defendants engage in all necessary efforts to ensure that their drop boxes are in complete compliance with the requirements outlined in the ADA to guarantee that the drop boxes are fully accessible and independently usable by individuals with mobility disabilities;

- Defendants alter their existing procedures for repair and maintenance so that the accessibility barriers to the use of their drop boxes by those with disabilities do not return; and

- Plaintiffs appoint representatives to observe Defendants' drop boxes and relevant facilities to confirm that the injunctive relief ordered under Paragraph 6.a. and 6.b. has been implemented and will remain in place for perpetuity.

8. Plaintiffs assert their claim for injunctive relief as a nationwide class for injunctive relief under Fed. R. Civ. P. 23(b)(2). The specific intention behind Rule 23(b)(2) was that it would be utilized in civil rights cases where the plaintiffs seek injunctive relief for their benefit and the benefit of a class of similarly situated individuals. The note to the 1996 amendment to Rule 23 states:

> This subdivision is intended to reach situations where a party has taken action or refused to take action concerning a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior concerning the class as a whole, is appropriate …. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## II.
## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

10. Defendants' principal place of business is in this judicial district and they have otherwise purposely availed themselves of the markets in Tennessee to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(a) (b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue in this

matter occurred.

### III.

### PARTIES

12. Plaintiff, Randy Alexander, is, and at all times relevant hereto was, a resident of Benton County, Mississippi, and uses a wheelchair for mobility. Plaintiff has a FedEx account. Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.

13. Plaintiff Randy Alexander is a C-6 quadriplegic. Plaintiff's condition requires his use of a wheelchair for mobility purposes.

14. Plaintiff MCIL is a 501(c)(3) non-profit whose primary mission is to facilitate the full integration of people with disabilities into all aspects of community life.

15. Key to being part of everyday life is information about accessibility in the community. MCIL is a source of information on accessible, affordable, integrated housing; The *Americans with Disabilities Act;* and disability-related community resources.

16. MCIL is dedicated to its mission to *facilitate the full integration of persons with disabilities into all aspects of community life*. The Memphis Center for Independent Living has a history of working on the implementation of civil rights laws that include people with disabilities in the community.

17. Defendant FEDERAL EXPRESS CORPORATION ("FedEx") is a Delaware Corporation, focusing on supply chain transportation, logistics, packaging, and ancillary clearance services. Its principal executive offices are located in Memphis, Tennessee, in this judicial district.

18. The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1-25 (together with FEDERAL EXPRESS CORPORATION, "Defendants"), are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to assert their true names and capacities when known. Plaintiffs are informed and believe and thereon asserts that each of the fictitiously named Defendants is responsible in some manner for the occurrences asserted in this Complaint and for Defendants' violations.

19. Plaintiffs assert that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, agents, and/or subsidiaries of their Co-Defendants and in doing the things asserted in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

20. Defendants' drop box facilities across the country are, as defined in 42 U.S.C. §12181(7)(G), places of public accommodation, and Defendants are therefore subject to the requirements of the ADA.

## IV.

## FACTUAL BACKGROUND

21. In 1986, the National Council on Disability (NCD) published "Toward Independence: An Assessment of Federal Laws and Programs Affecting Persons with Disabilities."

22. Also in 1986, the NCD recommended the enactment of an Americans with Disabilities Act (ADA) and drafted the first version of the bill.

23. The ADA is a civil rights law that prohibits discrimination against people based on disability.

24. The ADA gained bipartisan support in late 1988 and early 1989.

25. The ADA was signed into law on July 26, 1990.

26. Accompanying the signing, President H.W. Bush stated "Let the shameful wall of exclusion finally come tumbling down."

27. Under Title III of the ADA, no individual may be discriminated against based on disability with regards to the full and equal enjoyment of the goods, services, facilities, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

28. One of the definitions of "discrimination" under Title III of the ADA is a "failure to remove" architectural barriers in existing facilities. 42 U.S.C. § 12182(b)(2)(A)(iv)

29. The ADA Amendments Act of 2008 was signed into law on September 25, 2008.

30. The United States House Committee on Education and Labor stated that the 2008 amendment "makes it clear that the ADA is intended to provide broad coverage to protect anyone who faces discrimination based on disability."

31. Plaintiff Randy Alexander visited Defendants' drop box located at 766 S White Station Rd, Memphis, Tennessee, on May 14, 2022, to make a shipment.

32. Plaintiff, Randy Alexander, was denied the opportunity to participate in the full and equal enjoyment of Defendants' services, facilities, privileges, advantages, and accommodations. He was denied when he encountered drop box door heights over the ADA Accessibility Guidelines ("ADAAG") reach range standards, and the force required to operate the drop box doors over the ADAAG's operable parts standards. 36 CFR Appendix D to Part 1191, §§ 308.2, 308.3, and 309.4.

33. Despite this difficulty, frustration, and unequal treatment, Plaintiff, Randy Alexander, will continue to use Defendants' drop box services in the future due to the proximity of Defendants' facilities, its reliability, timeliness, and overnight delivery services, and plans to return to Defendants drop boxes, but is deterred from doing so due to the discrimination he has faced and expects to face in the future. Furthermore, Plaintiff, Randy Alexander, is an advocate for others in wheelchairs, intends to return to Defendants' drop boxes to ascertain whether those facilities remain in violation of accessibility standards. Defendants operate and own more than 30,000 unstaffed drop boxes for package shipment drop-offs across the United States.

34. Defendants install their drop boxes by public sidewalks with concrete bases, on the street side of curbs, also with concrete bases, and at shopping centers, grocery stores, and similar areas with heavy foot traffic.

35. FedEx drop boxes offer a convenient and never unavailable drop-off service for packages, allowing customers to ship their boxes without any person-to-person contact – a benefit that only grew more valuable in the COVID-era.

36. FedEx drop boxes are maintained and stocked by drivers employed by Defendants regularly, at least several times per week.

37. Defendants and their employees repair drop boxes that are broken or otherwise not functioning properly.

38. The design and physical size of the drop boxes are unchanged throughout the nation.

39. There is a door that drops down that is operated by grasping the door's handle and pulling the door in an outward (away from the box) and downward motion on all the drop boxes.

40. Once open, the operator places a FedEx package in the drawer, which then falls into the drop box when the door is shut by the user.

41. Every drop box additionally has a "lift" door that is found above the drop door. The lift door is operated by reaching for the lip of the door, as there is no accompanying handle for the door, and pushing the door inwards in an upwards direction.

42. Inside the lift door one can find free FedEx Express airbills and envelopes, among other FedEx-associated things.

43. The ADA Accessibility Guidelines ("ADAAG") promulgated by the Department of Justice under 42 U.S.C. § 12186(b), featuring both the 1991 ADAAG Standards (28 C.F.R. § pt. 36, App. D) and the 2010 Standards (36 C.F.R. § pt. 1191, App. D), articulate the minimum accessibility standards for reach ranges of drop boxes and the maximum allowable force required to use drop boxes such as those Defendants own, operate, and maintain.

44. Where the "forward reach is unobstructed, the high forward reach shall be 48 inches *1220 mm) maximum and the low forward reach shall be 15 inches (380 mm) minimum above the finish floor or ground." 36 CFR Appendix D to Part 1191, § 308.2.1.

45. "Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches (1220 mm) and the low side reach shall be 15 inches (380 mm) above the finish floor or ground." 36 CFR Appendix D to Part 1191, § 308.3.1.

46. The ADAG sets forth that operable parts on drop boxes, such as the drop-down door and lift door on Defendants' drop boxes, are placed within one or more reach ranges that are specifically articulated by the ADAAG. 36 CFR Appendix D to Part 1191, § 309.3.

47. Section 309.4 sets forth that "[o]perable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum." 36 CFR Appendix D to Part 1191, § 309.4.

48. The drop doors of Defendants' drop boxes consistently surpass the ADAAG's high and side reach limits when found on poured concrete pads next to sidewalks, and when positioned on the street side of curbs – both common configurations for Defendants.

49. The lift doors of Defendants' drop boxes exceed the ADAAG's height and side reach limits regardless of where the dropbox is situated, and therefore mobility-impaired wheelchair users are completely barred from accessing complimentary FedEx Express airbills, FedEx envelopes, and similar FedEx items available at each dropbox.

50. The pressure required by a wheelchair user to use either the drop door or lift door at Defendants' drop boxes greatly exceeds the ADAAG's limit of 5 pounds of force.

51. When Plaintiff used Defendants' drop box at 766 S White Station Rd, Memphis, Tennessee, the pressure required to operate the drop door required more than 5 pounds of force, operating the top lift door at the drop-box unit would require opening over 48 inches above finished floor/above finished ground to obtain items and elements on the shelving, and the pressure to use the lift door required well more than 5 pounds of force.

52. Because of the height of the compartment behind the lift door, Plaintiff could not see or access the FedEx envelopes and other similar items.

53. Defendants deprive mobility-impaired individuals of the full benefits of Defendants' services by failing to make their drop boxes accessible to wheelchair users.

54. In doing so, Defendants perpetuate the stigmatization and exclusion that Title III of the ADA was meant to deal with.

55. Defendants have systematically and routinely created excessive height and force conditions at their drop boxes as a result of their maintenance procedures, in violation of the ADA and its implementing regulations.

56. Without a change in Defendants' existing practices or procedures, the accessibility barriers presented by the drop boxes will continue to reoccur even after they have been temporarily fixed, as their current procedures will continue to result in the issues arising again and again.

## CLASS ASSERTIONS

57. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of themselves and those similarly situated. Plaintiff seeks certification of the following Nationwide Class:

> All persons that use a wheelchair and have qualified mobility disabilities who were encountered accessibility barriers and were denied the full and equal enjoyment of any FEDERAL EXPRESS CORPORATION drop box in the United States due to Defendants' failure to comply with the ADA's regulations in their purportedly accessible and unstaffed drop boxes (the "Nationwide Injunctive Class").

Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification and/or the result of the discovery.

58. This action should be certified as a class action under the Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class.

59. <u>Numerosity</u>: The Class is so numerous that the joinder of all members is impracticable. The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court. The Class likely consists of thousands, if not tens of thousands, of disabled shippers throughout the United States.

60. <u>Commonality</u>: Defendants' policy and practice of installing and maintaining inaccessible drop boxes have subjected and affected all members of the class. As such, there are many common questions of law and fact among the Plaintiff and members of the class.

61. <u>Typicality</u>: Plaintiff's claims are representative of the putative Class because his claims are typical of the claims of the Class members – relating to the accessibility of Defendants'

drop boxes. If brought and prosecuted individually, the claims of each putative Class member would require proof of the same materials and substantive facts, rely on the same remedial theories, and seek the same relief.

62. <u>Adequacy:</u> Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation as counsel.

63. Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief concerning Plaintiffs and the Class as a whole. Alternatively, or in addition, Plaintiffs may seek in addition to the Injunctive relief, relief under Rule 23(b)(3), and the class satisfies all requirements of Rule 23(b)(3).

## FIRST CAUSE OF ACTION
## VIOLATION OF THE ADA, TITLE III
## [42 U.S.C. §§ 12101 et seq.]
### (Against all Defendants)

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. Plaintiff Randy Alexander is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2), as at all times relevant to this action, Plaintiff has been substantially limited in regard to his mobility. This has necessitated his use of a wheelchair.

66. Defendants own and operate drop box facilities for the drop-off of packages for shipment. These drop boxes are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

67. As a result of their status as places of public accommodation, the ADA requires that the accessible features of Defendants' drop box facilities be made and maintained so that they are readily accessible to and usable by individuals with mobility disabilities at all times – such as the drop doors and lift doors.

68. The barriers to the use of Defendants' drop boxes described above shows clearly that Defendants' required accessible facilities for their drop boxes were not constructed, repaired, or maintained in a manner that lets them be readily accessible to and usable by individuals who use wheelchairs as a result of mobility impairment.

69. For Defendants to offer unequal or separate benefits to individuals with disabilities is unlawful discrimination under the ADA. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

70. Defendants, by denying him access to the full and equal enjoyment of their services in their drop boxes and the facilities, privileges, advantages, and/or accommodations of such, discriminated against Plaintiff based on his disability in violation of the ADA.

71. Defendants, by denying him equal opportunity to participate in and benefit from the full use of Defendants' services, further discriminated against Plaintiff in violation of the ADA.

72. Plaintiff Randy Alexander, unlike persons without disabilities who are not forced to use a wheelchair as a result of mobility impairment, cannot independently use the features of the drop boxes as a result of Defendant's non-compliance with the ADA regulations regarding the physical specifications required to be accessible.

73. Furthermore, the architectural and design barriers described above show that Defendants have failed to remove barriers to the use of their drop boxes as required by 42 U.S.C. § 12182(b)(2)(A)(iv) – further discriminating against Plaintiff in violation of the ADA.

74. Defendants' recurrent inability to maintain the features of their drop boxes, remove architectural barriers, and/or modify their existing policies to ensure their strict compliance with the reach range and operable parts requirements of the ADA constitutes unlawful discrimination based on a disability in violation of Title III of the ADA.

75. Defendants' conduct is continuous and ongoing. This conduct has harmed Plaintiff and will continue to harm Plaintiff and other mobility impaired individuals in wheelchairs until it is rectified.

76. Unless Defendants are forced via injunction to alter their ongoing and continuous course of conduct regarding the installation and maintenance of their drop boxes which constitute

places of public accommodation, they will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class via unlawful discrimination.

77. Plaintiffs invoke their statutory rights to declaratory and injunctive relief under the ADA, as well as costs and attorneys' fees, as Defendant continues to fail to comply with the ADA's requirements to make their drop box facilities fully accessible to, and independently usable by, mobility impaired individuals who use wheelchairs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of himself and the members of the Class, pray for:

- A declaratory judgment that Defendants violate the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' drop box facilities, as described above, are not fully accessible to and independently usable by individuals who use wheelchairs;
- A permanent injunction under 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501(b), requiring that
    - Defendants engage in all necessary efforts to ensure that their drop boxes are in complete compliance with the requirements outlined in the ADA to guarantee that the drop boxes are fully accessible and independently usable by individuals with mobility disabilities;
    - Defendants alter their existing procedures for repair and maintenance so that the accessibility barriers to the use of their drop boxes by those with disabilities described in this complaint do not return in perpetuity; and
    - Plaintiff's appointed representatives observe Defendants' drop boxes and relevant facilities to confirm that the injunctive relief ordered under Paragraph 6.a. and 6.b. has been implemented and will remain in place for perpetuity.
- An Order certifying the Classes proposed by Plaintiffs, naming Plaintiffs as Class representatives, and appointing their counsel as Class counsel;

- Payment of costs of suit;

- Payment of reasonable attorneys' fees, under 42 U.S.C. § 12205, 28 CFR § 36.505;

- An Order retaining jurisdiction over this case until Defendants have complied with the Court's Orders; and,

- The provision of whatever other relief the Court deems just, equitable and appropriate.

Respectfully Submitted,

This 17th Day of May, 2022.

**WAMPLER, CARROLL, WILSON & SANDERSON, P.C.**

*/s/J. Luke Sanderson*
J. Luke Sanderson  #35712
Wampler, Carroll, Wilson & Sanderson, P.C.
208 Adams Avenue
Memphis, TN 38103
901.523.1844 Phone
901.523.1857 Fax
luke@wcwslaw.com

*Counsel for Plaintiffs and Proposed Classes*